Filed 1/2/25  P. v. Perkins CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRANDON PERKINS,<br><br>    Defendant and Appellant. | B331425<br><br>(Los Angeles County Super. Ct. No. GA099146) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael D. Carter, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Brandon Perkins (defendant) was convicted of second degree murder on an aiding and abetting theory. His conviction was affirmed on direct appeal, but he later filed a Penal Code section 1172.6 (former section 1170.95) petition arguing he should be resentenced because the jury instructions at his criminal trial allowed the jury to convict him without finding he personally harbored malice aforethought.[1] The trial court denied his petition at the prima facie stage without issuing an order to show cause. We are asked to decide whether this was error because defendant could have been convicted on a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).)

## I. BACKGROUND

### A. *The Murder and Ensuing Criminal Proceedings*

In June 2016, defendant and Laquan Parker (Parker) drove to an apartment complex to pick up Parker's girlfriend, Dezerae Lyons (Lyons). When Lyons walked to the front of the complex to meet them, she was accompanied by Phillip Niles (Niles) and another woman. Defendant and Parker began arguing with Niles, and Parker ultimately drew a firearm and shot Niles multiple times. Niles was still able to flee some distance, but defendant and Parker gave chase in an automobile. During the chase, defendant fired his own gun at Niles too. Niles was later found dead, and defendant and Parker were apprehended.

---

[1] Undesignated statutory references that follow are to the Penal Code.

The criminal information filed against defendant and Parker alleged they each personally and intentionally used and discharged a handgun causing great bodily injury and death. They were also charged with possession of a firearm by a felon and carrying a stolen loaded firearm. Defendant alone was charged with being an accessory to a felony after the fact. At trial, Parker admitted shooting Niles but claimed he shot him in self-defense.

### 1.    *Jury instructions at trial*

The jury was instructed with CALCRIM No. 400, which provided in pertinent part that "[a] person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." The jury was also instructed with CALCRIM No. 401, on direct aiding and abetting, which explained the charges the prosecution filed asserted defendant was liable for the murder as an aider and abettor.

In pertinent part, the CALCRIM No. 401 instruction provided: "To prove that defendant Brandon Perkins is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." "Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

3

The trial court also gave defendant's jury a CALCRIM 520 instruction. Among other things, it informed the jury that, to prove a defendant guilty of murder with malice aforethought, the People must prove: "1. The defendant committed an act that caused the death of another person; [¶] 2. When the defendant acted, he had a state of mind called malice aforethought; [¶] AND [¶] 3. He killed without lawful justification." The instruction additionally stated: "There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with *express malice* if he unlawfully intended to kill. [¶] The defendant acted with *implied malice* if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard to human life. [¶] Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time. [¶] If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM No. 521."

The cross-referenced CALCRIM No. 521 instruction that the jury was also given provided: "A defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice

4

and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before completing the act that caused death."

The jury was not instructed on felony murder or the natural and probable consequences doctrine.

### 2.    *Jury verdict and direct appeal*

The jury found Parker guilty of first degree murder and found true allegations that he personally and intentionally discharged a handgun causing great bodily injury or death. The jury found defendant guilty of second degree murder (and not guilty of first degree murder). The jury found true allegations that defendant personally and intentionally discharged a firearm, but it found not true the allegation that the discharge caused great bodily injury or death.[2] The trial court sentenced defendant to 15 years to life for second degree murder and added a 10-year enhancement for the section 12022.53, subdivision (b) firearm discharge allegation.[3] On direct appeal, this court reversed defendant's conviction for being a felon in possession of a firearm but otherwise affirmed. (*People v. Perkins*, (Jul. 30, 2021, B302370) [nonpub. opn.].)

---

[2]    The jury also found Parker and defendant guilty of the other charges against them.

[3]    The court sentenced defendant to a concurrent 16-month term for the felon in possession of a firearm offense and stayed sentence on his other convictions pursuant to section 654.

5

### B.    Defendant's Section 1172.6 Resentencing Petition

In November 2021, defendant personally filed what the trial court construed as a petition seeking relief pursuant to section 1172.6 as amended by Senate Bill No. 775 (2021-2022 Reg. Sess.).  Defendant asserted he was convicted of second degree murder based on a theory that he was not the actual killer, and in which malice was imputed to him.  The court appointed counsel to represent defendant.

The People opposed defendant's petition and arged he had not established a prima facie case for relief because the jury was not instructed on the natural and probable consequences doctrine, because this court affirmed defendant's murder conviction on an aiding abetting theory on direct appeal, and because the petition was based on the same argument made in defendant's previously denied motion for new trial—a denial this court also affirmed on direct appeal.  After holding a hearing and entertaining argument from counsel, the trial court found defendant had not made a prima facie case for relief and denied the petition.[4]

## II.  DISCUSSION

The trial court did not err in finding defendant did not make a prima facie case for section 1172.6 relief.  To convict defendant of murder as instructed, defendant's trial jury was required to find defendant knew Parker intended to commit the

---

[4]    At the hearing, defendant argued the trial court should consider the prosecutor's closing argument at trial.  The court declined.  Defendant asked this court to take judicial notice of the pertinent excerpts from the Reporter's Transcript of his trial, and that request was granted.

6

crime—here, premeditated first degree murder—and intended to aid and abet Parker in committing that crime. Based on the evidence at trial, this meant the jury had to find defendant acted with malice and could not impute Parker's malice to defendant. That the jury returned a second degree murder verdict for defendant rather than a first degree finding does nothing to undermine the conclusion that there could be no imputation of malice; the second degree finding is at least explainable as the product of compromise or lenity. (See, e.g., *People v. Avila* (2006) 38 Cal.4th 491, 600.)

A.     *Section 1172.6 and Appellate Review*

After amendments by Senate Bill No. 775, section 1172.6 provides in relevant part that "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd. (a).) At the prima facie stage of section 1172.6 review, a trial court must determine whether the petitioner would be entitled to relief if the petition's allegation were proven. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) In making its determination at the prima facie stage, the court should not make credibility determinations or engage in "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at 974.) Our review is de novo. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

7

### B. The Trial Court Did Not Err in Finding Defendant Did Not Make a Prima Facie Case for Relief

Defendant's jury was not instructed on felony murder or the natural and probable consequences doctrine, nor does defendant contend he was convicted under those theories. It is also undisputed that defendant's murder conviction was obtained on a direct aiding and abetting theory of liability. Defendant nevertheless argues he could have been convicted under a theory under which malice is imputed to a person based solely on that person's participation in a crime based on the jury instructions delivered during his trial. Specifically, he argues the aiding and abetting instruction (CALCRIM 401) and the murder instruction (CALCRIM 520) did not adequately inform the jury it must find he personally harbored malice aforethought to find him guilty of murder. In so arguing, defendant relies on *People v. Reyes* (2023) 14 Cal.5th 981, *People v. Powell* (2021) 63 Cal.App.5th 689, and *People v. Langi* (2022) 73 Cal.App.5th 972.

In *Powell*, the defendant and a codefendant were convicted of second degree murder and first degree residential burglary for going with a group to the victim's home, at which the victim was beaten and fatally stabbed. On appeal, the *Powell* court concluded the standard aiding and abetting instruction, CALCRIM No. 401, is "not tailored for" aiding and abetting an implied malice murder because its language focuses on whether the aider and abettor knew the perpetrator intended to commit the *crime*, but in the context of implied malice murder the relevant question is whether the aider and abettor intended the commission of the life endangering act. (*Powell, supra*, 63 Cal.App.5th at 714.) The court in *Powell* therefore concluded the

8

instructions were erroneous, though it found the error harmless. (*Ibid.*)

Our Supreme Court agreed with *Powell's* explanation of the elements of aiding and abetting an implied malice murder in *Reyes*, *supra*, 14 Cal.5th at 991. There, our high court reversed a trial court's denial of a section 1172.6 petition after an evidentiary hearing because the trial court "said it was 'guided by the principles' of implied malice murder in CALCRIM No. 520" and "[t]hat instruction alone . . . does not encompass the elements of aiding and abetting implied malice murder as set out in *Powell.*" (*Ibid.*) Specifically, the trial court found that "'the defendant, along with several other gang members, one of which [was] armed, traveled to rival gang territory' and then considered whether that act was done with the mental state required for implied malice." (*Ibid.*) Our Supreme Court held this was error because "implied malice murder requires attention to the aider and abettor's mental state concerning the life endangering act committed by the direct perpetrator, such as shooting at the victim." (*Id.* at 992.) The court further stated that, "[b]y relying exclusively on the legal principles [for implied malice] outlined in CALCRIM No. 520, the trial court did not appear to recognize that implied malice murder requires, among other elements, proof of the aider and abettor's knowledge and intent with regard to the *direct perpetrator's* life endangering act." (*Id.* at 991.)

In *Langi*, the First District applied *Powell's* reasoning to a section 1172.6 resentencing petition. There, Langi was part of a group that beat and robbed the victim, who ultimately fell, hit his head, and died. (*Langi, supra*, 73 Cal.App.5th at 975.) Langi argued at trial that he did not throw the fatal punch and his jury was instructed on aiding and abetting and second degree murder.

9

The jury convicted him of robbery, battery, and second degree murder (*Id.* at 977), and his subsequent section 1172.6 petition was summarily denied.

The reviewing court assumed the jury had convicted Langi as an aider and abettor. It then found the standard jury instructions were ambiguous and permitted the jury to find Langi guilty on a theory under which malice was imputed to him based solely on his participation in the crime. (*Langi, supra*, 73 Cal.App.5th at 980.) The court observed that while the aiding and abetting instruction stated a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage the crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Id.* at 982.) The perpetrator's unlawful purpose could instead have been "only to strike or to injure, or conceivably only to embarrass, the victim." (*Ibid.*) "Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Ibid.*) Because the aiding and abetting instruction did not require the jury to find the defendant personally acted with malice, the court concluded the jury could have convicted Langi as an aider and abettor merely because he intended to aid or assist in the beating of the victim. (*Id.* at 983.)

While *Powell* and *Reyes* identify issues that can arise with CALCRIM Nos. 401 and 520 and *Langi* holds there are circumstances in which the relevant jury instructions can create an ambiguity, those circumstances and issues do not arise here. Defendant's jury was instructed with CALCRIM Nos. 401 and

520, but the context in which the instructions were delivered is important.

That context reveals the jury certainly convicted defendant of aiding and abetting Parker's willful and deliberate killing of Niles, not an implied malice murder. CALCRIM No. 401, on aiding and abetting, required the jury to find defendant knew that Parker intended to commit "the crime" and defendant intended to aid and abet the commission of "the crime." The only charges at issue here were murder, improper possession of firearms (used in the murder), and accessory after the fact (of the same murder). The only theories of murder on which the jury was instructed were first and second degree murder, either as a direct perpetrator or as an aider and abettor. The only theory of first degree murder upon which the jury was instructed was murder committed willfully, intentionally, and with premeditation. The same jury that convicted defendant of second degree murder under a theory of aiding and abetting convicted Parker of first degree murder, thereby necessarily finding Parker acted with the intent to kill, not just with implied malice. Read in context, the instruction therefore required the jury to find defendant knew Parker intended to commit an intentional killing.[5] By contrast, none of the defendants in *Langi*, *Powell*, or

---

[5] That was also strongly borne out by the evidence presented at trial. After Parker shot Niles multiple times in defendant's presence but Niles was still able to flee some distance, defendant and Parker immediately pursued Niles and defendant fired at Niles with his own gun. This is compelling evidence of malice aforethought; indeed, we see no possibility a rational jury could have failed to find defendant personally harbored malice under the circumstances. (See, e.g., *People v. McCoy* (2001) 25 Cal.4th 1111, 1123 ["Absent some circumstance negating malice," where

11

*Reyes* were convicted alongside a co-defendant found guilty of an express malice murder by the same jury. (See, e.g., *Langi, supra,* 73 Cal.App.5th at 982 [reasoning the jury could have returned a murder finding without concluding Langi knew the principal in the crime aimed to kill].

The fact that the jury here was not asked to adjudicate lesser assaultive crimes against the victim further distinguishes this case from *Langi, supra,* 73 Cal.App.5th 972. In that case, the defendant was charged with, and convicted of, robbery and battery in addition to murder, which led the court of appeal to conclude he could have been convicted based on a finding he intended to aid and abet only the perpetrator's intentional act of punching the victim, rather than the victim's killing. (*Langi, supra*, 73 Cal.App.5th at 977, 983.) Here, the jury did not have to adjudicate defendant's guilt of an assaultive offense against Niles short of murder and there is accordingly no possibility the jury imputed malice to defendant by finding he aided and abetted some "crime" or act other than an intentional murder. Defendant was thus ineligible for relief as a matter of law and the trial court did not err in denying his petition without holding an evidentiary hearing.[6]

---

the only unlawful purpose charged is an unlawful killing, "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice"].)

[6] Defendant also argues the trial court's denial of the petition at the prima facie stage violated his due process rights. "Given our conclusion that [defendant] is ineligible for relief as a matter of law, the argument necessarily fails." (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1030, fn. 7.)

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM (D.), J.